[No. 8937. In Bank. — May 24, 1886.]

## JOSEPH W. REAY, APPELLANT, v. JOHN BUTLER ET AL. J. P. TREADWELL, INTERVENOR AND RESPONDENT.

EJECTMENT — ACTION AGAINST TENANT — SUBSTITUTION OF LANDLORD AS DEFENDANT. — Prior to the adoption of section 379 of the Code of Civil Procedure, the court had power, in an action of ejectment against a tenant in possession, to substitute the landlord as the party defendant, after a notice and motion to that effect.

PRACTICE — APPEAL — BILL OF EXCEPTIONS — DELAY IN SETTLEMENT. — The Supreme Court will not refuse to consider a bill of exceptions on the ground that it was not settled in time, unless it affirmatively appears from the record that the bill was not presented in time, or that the regular steps were not taken for its settlement.

ID. — ASSIGNMENT OF ERROR OF LAW. — A bill of exceptions need not contain any assignments of errors of law, and may be settled after an appeal has been taken.

ID. — DELAY IN FILING. — Delay in filing a bill of exceptions for more than six months after its allowance by the judge will not authorize the Supreme Court to disregard it, if it is properly certified to the court as a part of the record.

EJECTMENT — INTERVENTION BY LANDLORD — EQUITABLE DEFENSE — UNEXECUTED CONSPIRACY. — Conceding that, in an action of ejectment against a tenant in possession, the landlord may intervene and set up any equitable defense which he may have to the action, an intervention by the landlord which merely avers an unexecuted design, by collusion between the tenant of the intervenor and the plaintiff, to allow a judgment by default against the tenant, before the landlord was informed of it, does not raise any equitable issues.

ID. — INSUFFICIENT AVERMENTS — EQUITABLE RELIEF — FRAUDULENT ACTION — INJUNCTION. — In such an action, an averment by the intervenor that

the claim of the plaintiff is invalid and unfounded, and a cloud upon his title, and that the plaintiff intends to prosecute another clandestine and fraudulent suit of ejectment against the intervenor's servants in charge of the land, without his knowledge, and with a view to trick him out of the possession thereof, is not sufficient to entitle the intervenor to invoke the aid of a court of equity, or to an injunction against the prosecution of such alleged fraudulent suit.

ID. — ONE NOT A PARTY CANNOT BE DISPOSSESSED. — A person in the possession of land cannot be dispossessed under a writ issued on a judgment rendered in an action to which he was not a party, in which he was not heard, and where the defendants never were in possession.

APPEAL — ORDER REFUSING TO VACATE JUDGMENT. — The Supreme Court will not take jurisdiction of an appeal from an order refusing to vacate a judgment if the errors alleged to have been committed can be considered on an appeal from the judgment.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing to vacate the judgment.

The facts are stated in the opinion of the court.

*Flournoy & Mhoon,* for Appellant.

*William Matthews, Fisher Ames,* and *W. C. Burnett,* for Respondent.

THORNTON, J.—On the 20th of February, 1866, the plaintiff commenced an action to recover of defendants possession of a lot of land situate in the city and county of San Francisco. The complaint is in the usual form in the action of ejectment, so called, in this state.

To this complaint the defendants, by J. P. Treadwell, as their attorney, filed an answer.

The answer denies each and every allegation of the complaint, and then proceeds for a further and separate answer to aver that J. P. Treadwell at all times in the complaint mentioned and long before was and ever since has been and still is the owner of and in possession and occupation and entitled to the possession of the land in the complaint described, and that the possession of said land by the defendant supposed in the complaint was under and by leave of said Treadwell, and in subordina-

tion to his right and title, and not otherwise, and that said Treadwell is ready and willing to and does defend this action as landloŕd and owner of the demanded premises. The answer thus concludes:—

"Wherefore defendants pray that an order of court may be made allowing said Treadwell to defend this action, and that they be hence dismissed, and for costs of suit."

This answer was filed on the 2d of March, 1866. That the order allowing Treadwell to defend the action would have followed as of course on notice and motion, we regard as settled in this state. (*Dutton* v. *Warschauer*, 21 Cal. 609; *Calderwood* v. *Brooks*, 28 Cal. 151; *Dimick* v. *Deringer*, 32 Cal. 488; *Valentine* v. *Mahoney*, 37 Cal. 389.)

That in the condition in which the cause stood on the filing of the answer, Treadwell, by a notice and motion, which would have been granted as soon as made, would have been constituted so far *dominus litis* that no judgment could have been procured in the cause by a fraud or trick without his knowledge and ability to protect himself, is well settled by the rulings in this state. (*Dutton* v. *Warschauer* and *Valentine* v. *Mahoney, supra.*)

It should be remarked here that the pleadings in the cause were filed before the adoption of the provision in the Code of Civil Procedure (see section 379) allowing the landlord to be made a party.

The statement above made exhibits the condition of the cause when an intervention by J. P. Treadwell, the same person who signed the answer as attorney for defendants, was allowed to be filed.

This pleading begins with the statement that the intervenor has an interest in the subject of the action, and against maintaining the same, against both plaintiffs and defendants, and then proceeds to state that at the time this action was commenced, and long before, the intervenor, Treadwell, was, ever since has been, and still is the owner and in the exclusive possession and occu-

pation *of all that part of the demanded premises known as
and called Speck ranch or Treadwell ranch;* that while he
was so owner and in possession, the plaintiff and defend-
ants, with other persons unknown to the intervenor,
confederated together to defraud him and to trick him
out of the possession of his said land by means of a
clandestine suit in ejectment therefor, to be brought by
the plaintiff against defendants, and in which they
should suffer the plaintiff to obtain judgment and pos-
session by default before the intervenor should have
notice thereof; that in pursuance of this conspiracy,
while the intervenor was in possession, defendant Owens
executed a certain pretended conveyance of said ranch
to the plaintiff, who intends to rely on the same as color
of title; that on February 16, 1866, said Owens made a
contract with the intervenor to go on the ranch and do
the carpenter work in erecting a small dwelling-house on
said ranch; that Owens then employed defendant Butler
as a carpenter to aid him in doing the work for the in-
tervenor, on which Butler first went on the ranch in
furtherance of the conspiracy; that plaintiff, in pursu-
ance of said conspiracy, then employed a lawyer (Peter
Dempsey) as his attorney, who accordingly did draw up
the complaint in this action against defendants, and
caused them to be therein summoned in February, 1866;
that the plaintiff and his said attorney then requested
and procured the defendants to conceal from this inter-
venor all knowledge of the fact that they had been sum-
moned or this suit had been commenced, and to delay
said work until judgment by default had been entered
against them and plaintiff put in possession by the
sheriff; and also paid the defendants a sum of money,
and promised to pay them more, so to aid them in the
conspiracy; and defendants, induced thereby, did delay
the work for several days, and concealed from intervenor
all knowledge of the suit or service of summons on them
until the tenth day thereafter, when the said conspira-

tors fell out among themselves as to the division of the spoil, and a knowledge of the same then first came to the knowledge of the intervenor; and the intervenor shows that at the time this action was commenced neither of the defendants was in possession or occupation of any part of the land described in the complaint, or claiming any right or interest therein, and that they do not defend this action themselves.

It is further stated that the defendant never resided on the said land mentioned herein; that the plaintiff was informed of, and well knew, that defendants never were in possession of and claimed no interest in the land described in the complaint, each and every allegation of which is untrue; that the plaintiff claims some right or interest in the land described in the petition, *which latter is* within the demanded premises, but in fact his claim is without right, invalid, and is a cloud, and especially said pretended deed from Owens is a cloud, on this intervenor's title, and the plaintiff has continued and is intending to prosecute another clandestine and fraudulent suit of ejectment thereon *against the intervenor's servants* in charge of said ranch, without the intervenor's knowledge, and thereby trick him out of the possession thereof; that the plaintiff *ought to be compelled to set forth his claim, and the same ought to be declared invalid and barred as against the intervenor,* and the intervenor quieted in his title and possession of said ranch against all claims by the plaintiff thereto.

The prayer of the petition is as follows:—

" Wherefore this intervenor prays that this action by the plaintiff against the defendants Butler and Owens may be adjudged fraudulent against the intervenor, and that the plaintiff be restrained from commencing or prosecuting any other action to recover said ranch against defendants or any servant of the intervenor, and that all claims by the plaintiff to said ranch may be barred and declared to be invalid as against intervenor,

and the intervenor quieted in his title and possession against the same; and that the plaintiff may be decreed to pay the intervenor the expenses to which he has been hitherto put by this clandestine action against the defendants, and also his costs of this intervention, and also for such other, further, and different relief as he ought to have."

Every material allegation of this petition was denied by Reay.

A bill of exceptions, filed December 21, 1882, is in the record, which it is contended should be disregarded, on the ground that it was not settled in time. It appears from the certificate of the judge that it was settled on the 10th of June, 1882. The notice of appeal was served and filed on the 30th of December, 1880, and the contention seems to be that the bill could not be settled so long after the appeal was taken. But it nowhere appears that the bill was not presented in time, and the regular steps taken for its settlement. The settlement may have been postponed by the order of the judge. It must appear to this court from the record that the regular steps were not taken for the settlement of the bill. Unless this appears, we are bound to presume the bill was regularly settled. A mere objection to such settlement, in the absence of the showing above stated, does not authorize this court to disregard the bill.

It is said that there is no assignment of errors in the bill as settled. We presume the errors here referred to are "errors of law." There is no requirement in the statute that the bill should contain any such assignment.

That the bill was not settled until after the appeal was taken is no objection to it. Its settlement may have been thus postponed for sufficient reasons, and nothing appearing to the contrary, we must presume that such was the case.

It is said that the bill was not filed until more than six months after it was allowed by the judge. We do not

consider this a reason why it should be disregarded. It comes here properly certified as a part of the record of the court below, and it must be so treated in this court. The delay in filing it after the settlement does not authorize this court to disregard it.

As shown by the above bill of exceptions, on the 8th of February, 1868, the plaintiff moved to strike out the above intervention, on the ground that an intervention is not proper in an action of ejectment. This motion was denied, and plaintiff excepted to the ruling.

As further appears from the same bill, the cause came on regularly for trial on the 25th of September, 1867, before the court and a jury. Thereupon the following occurred, as stated in the bill:—

"Plaintiff was sworn as a witness, and was testifying in his own behalf in the case, when the court called for the reading of the pleadings.

"And thereupon was read the plaintiff's complaint and the answer thereto, and the intervenor's complaint in intervention, with proof of service thereon on the plaintiff and the defendants Butler and Owens, and the entry of default of the two latter for not answering the intervention, and also the plaintiff's answer to the intervention, a copy of which is in the judgment roll. The court said if the conspiracy and frauds alleged in the complaint of intervention were true, as there stated, they concern the court as well as the intervenor, and that the court would protect itself against attempted impositions upon it; that it was a matter of equitable cognizance that could not well be tried before a jury, and that it might be proper to have a preliminary inquiry as to that. The intervenor then moved the court that the equitable issues in the pleadings be first tried and determined without a jury; the plaintiff objected to the same, on the ground that the court had no jurisdiction to discharge said jury. The court overruled said objection, and discharged said jury, and granted said motion, and ordered said equitable

issues to be first tried before the court without a jury, to all of which plaintiff then and there duly excepted."

It may be conceded that a landlord might have been allowed to intervene and defend an action of ejectment brought against his tenants in their name, in accordance with the law regulating procedure in the courts of this state at the time Treadwell was allowed to file the intervention in this case. This, we think, was held by this court in *Dutton* v. *Warschauer*, 21 Cal. 609, and it was substantially so held in *Porter* v. *Garrissino*, 51 Cal. 560, 561,—though a distinction seems to be there made between an intervention under the statute and the leave given to a landlord to defend in the name of his tenant (Stat. of May 15, 1854; Stats. 1854, p. 73, secs. 71, 72, 73, 74), of which distinction we will say that it appears to us to be one without a difference.

The foregoing intervention by the landlord in this case to defend in the name of his tenants, however, extends only to the defenses which may be made at law.

And for the purposes of this case, it may also be conceded that the landlord might have been permitted to intervene and set up any equitable defenses which he might have to the action.

But if the landlord is allowed to intervene and set up a defense in equity, it must certainly be a defense of that character. In this case, it appears that the court treated the intervention as setting up an equitable defense, and after the trial of the action at law had commenced, the court, against the objection and exception of plaintiff, discharged the jury in order to try and determine the equitable issues. This it proceeded to do against the objection and exception of plaintiff, and rendered a judgment perpetually enjoining plaintiff from further prosecuting his action, and from all further proceedings in the cause, and further enjoining him from bringing and prosecuting any other action of ejectment for the Speck ranch, the land in the complaint and the

complaint of intervention described, against the tenants and servants of the intervenor, by collusion with them not to inform the intervenor thereof. The court did, in effect, dismiss the plaintiff's action without any trial of the issues joined by the complaint and answer. Truly, this was a novel proceeding.

What were the equitable issues disclosed by the intervention or the pleadings, we are unable to discover. We find nothing more averred than an unexecuted design by collusion between the tenants of the intervenor and plaintiff to allow a judgment by default against the defendants before the landlord was informed of it.

This design was abandoned and made known to the landlord (intervenor) in time to file an answer, which effectually put it out of the power of the colluders to effect it; for after answer filed there could be no default or judgment without the knowledge of the landlord. There was, then, no fraud which any court could be called on to redress. An unexecuted and abandoned intention to commit a fraud is not in contemplation of the law a fraud. *Fraud without damage* calls for no redress from any court. However in morals such conduct may be censurable, it is not regarded by the law as of sufficient consequence to put in operation the machinery of courts.

It may be added here, that the petition of intervention shows that the defendants in the action had abandoned all defense to the action, for it is expressly stated that "they [the defendants are here referred to] do not defend in this action themselves."

The further averment that plaintiff's claim is *invalid and unfounded, and is a cloud upon the intervenor's title*, is not sufficient to entitle the intervenor to invoke the aid of a court of equity.

Let it be remarked that a party may be allowed to invoke the powers of a court of equity to remove a cloud from his title, where the defendant setting up such a claim fails or refuses to bring an action by which the

claims of the respective parties may be determined; but clearly this cannot be the case where the person setting up such unfounded claim brings an action in which the respective claims of the opposing parties may be passed on and determined by due course of law, and challenges a trial of such claims.

The only matter averred to be a cloud upon Treadwell's title is a deed averred to have been executed by defendant Owens to the plaintiff or some other of the confederates, who has since executed a deed to plaintiff.

If such was the character of the deed, its effect could be determined in the action at law, which action was, in course of trial, urged by plaintiff, with the result above stated. When the legal remedy was at hand it was strange that the intervenor should have urged the court to turn aside from it for relief in a forum only allowable where a court of law could not afford redress.

After the allegations just above referred to as to the character of plaintiff's title, there follow these allegations:—

" And the plaintiff has continued and is intending to prosecute another clandestine and fraudulent suit of ejectment thereon against the intervenor's servants in charge of said ranch, without the intervenor's knowledge, and thereby trick this intervenor out of possession thereof; that the plaintiff ought to be compelled to set forth his said claim, and the same ought to be declared to be invalid and barred as against this intervenor, and the intervenor quieted in his title and possession of said ranch against all claim by the plaintiff thereto."

There does not seem to be any relation or connection of any sort between plaintiff and intervenor demanding equitable cognizance. So far as it appears from the pleadings, it is only that of one person setting up a claim to land in possession of another. Such being the case, there is no reason why the powers of a court of equity should be invoked by a complainant to prevent another

from bringing a suit against him, alleged to be clandestine and fraudulent, with a view to trick him out of possession of land. How the suit contemplated is fraudulent is not stated. Such an allegation is not of a character to demand the consideration of a court of justice. The facts should be averred from which it would appear to the court that the suit is fraudulent. As to its being clandestine, actions must be brought by filing a complaint in a public office with a public officer, and procuring a summons from that officer sealed with the seal of the court. Allegations of the character above mentioned would hardly call into operation the powers of a court of equity. Further, to determine whether the suit is fraudulent or not, it would have to be tried, and it would not be expected that a court of equity would spend its time in trying an action to determine whether it is conceived in fraud to prevent its being heard and determined in another forum equally competent to determine it. Again, the trick apprehended would be easy of redress in the court where the action was brought. The possession so obtained by collusion with the servants of the intervenor would be of brief duration, the intervenor would be promptly restored to a possession out of which he had been tricked, and the judgment vacated in the same court in which it had been procured.

That this can be and should be done we have no doubt. *Dimick* v. *Deringer,* 32 Cal. 436, was not a case apprehended by the intervenor. In that action, which was ejectment, the landlord, O'Hara, was made a party defendant along with the tenants Deringer and McDonald. Deringer and McDonald suffered default, and the action was dismissed as to O'Hara. A judgment was then entered against Deringer and McDonald on their default, and on a writ of execution issued on this judgment Dimick was put in possession. The court below, on motion and affidavit of O'Hara, ordered a perpetual stay of execution, that the sheriff restore Dimick and O'Hara

to possession of the land, that the order dismissing the action as to O'Hara be set aside, and the cause be restored to the calendar for trial. A similar order was made as to another tenant who was turned out under the writ.

This court dismissed the appeal from the order vacating the order dismissing the action and restoring it for trial as to O'Hara, on the ground that such order was not appealable, reversed the other orders, and remanded the cause, remarking at the same time as to the order the appeal from which was dismissed, that permitting it to stand would be of no service to O'Hara, as she did not propose to file a counterclaim. The court had antecedently to this remark stated in the opinion, that inasmuch as O'Hara was not in possession when the action was commenced, she was neither a necessary nor proper party to the action, and that the court below on the trial would on motion order a nonsuit as to her.

In this cause, it will be observed the landlord was a party, and permitted the action to be dismissed as to her though she was informed of the pendency of the action against her tenants and herself by the summons served on her. In this.it differs from an action brought against the tenants alone, of which the landlord knew nothing. This latter is the character of the action apprehended by the intervenor. Under such circumstances the landlord (Treadwell), knowing nothing of the action, would certainly be relieved by the court in which the action was brought from a judgment by default taken by collusion between a plaintiff and his tenants, and a possession obtained by a writ issued upon it. As we are of opinion that the court in which the action was pending on motion would relieve in the case stated by the intervenor, we see no reason why a resort should be allowed to a court of equity for relief.

If the prayer of the complaint gives character to the action, it would seem that the intervenor in this cause was attempting to change an action of ejectment into an

action to quiet title. In *Doyle* v. *Franklin*, 40 Cal. 106, it was held that an action of the latter character is not an equitable defense to the action of ejectment. We can perceive no reason why such a defense should be allowed at all, either at law or in equity, in the action of ejectment, for the judgment in favor of defendant in the ejectment being a bar to any other action in which the same matters are in issue, would be as effectual a protection to the defendant as a decree quieting his title against plaintiff. (See *Doyle* v. *Franklin*, *supra*.)

Further, conceding the averments of the complaint in intervention to be true, Treadwell could not be turned out of possession under a judgment against the defendants. It is stated in the complaint that before the action was commenced, and ever since, he has and had been in the possession and occupation of the land in controversy, and that the defendants never had any possession whatever of such land. How one in possession of land can be turned out of his possession on a writ issued on a judgment rendered in an action to which he was not a party, in which he was never heard, and where the defendants were never in possession, we cannot comprehend. To hold otherwise would be contrary to rules settled by numerous decisions of this court, and violative of every principle of right.

We cannot find in the intervention or pleadings any equitable issues to be tried. So far as the intervention shows any matters of defense, they can be made under the answer. The action, then, was purely one at law, in which the plaintiff was entitled under the constitution to a trial of the issues by a jury, and the court erred in discharging the jury against plaintiff's objections.

In our judgment the petition of intervention did not state facts sufficient to constitute a ground of intervention, and the court erred in considering it at all.

The court below seems to have derived the impression from the allegations of conspiracy and frauds in the

complaint in intervention,—that it was called on to protect itself from imposition.  Conceding it to be so, would it not have been better to test the matter by trying the issues in the cause, and ascertain whether the action was so far without foundation as to call for action on the part of the court, on the ground that an imposition was practiced or attempted to be practiced on it.  If such should have turned out to be the case, it could have been nothing more than an abuse of the process of the court, which would have constituted a contempt (Code Civ. Proc., sec. 1209), for which the plaintiff might have been proceeded against and punished.  But certainly a suit which the plaintiff cannot maintain would rarely afford grounds for such proceeding, any more than would an unmaintainable defense.  Such action may be instituted in entire good faith, and if so, there would be no abuse of process.  The law affords redress against parties bringing such actions, by the costs which they incur and which are taxed against them and in favor of the successful party.  And if the action is instituted and prosecuted maliciously and without reasonable or probable cause, the party aggrieved may have his action for damages, and recover the expense incurred by him beyond the taxable costs.  (*Eastin* v. *Bank of Stockton,* 66 Cal. 123.) But certainly, the court would be acting in the line of its duty and maintaining its dignity in trying the issues joined in the cause.  And we find nothing in the record in this case which excused the court from proceeding regularly to try the issues joined by the complaint and answer.  We think, for the reasons above given, that the intervenor would have found ample protection had this course been pursued.

The appeal from the order refusing to vacate the judgment should be dismissed.  Any grievances which the plaintiff suffered could be redressed by an appeal from the judgment, and under such circumstances this court will not take jurisdiction of an appeal from an order

denying a motion to vacate it. (*Henly* v. *Hastings*, 3 Cal. 342; *Holmes* v. *McCleary*, 63 Cal. 497; *Cal. Southern R. Co.* v. *S. P. R. Co.*, 65 Cal. 295.)

The judgment should be reversed, and the cause remanded, with directions to strike out the intervention, so that the trial may be had by a jury, if not waived, of the issues raised on the complaint and answer. The representative of the intervenor, who has died since the action was commenced, to be allowed to defend in the name of the defendants; all proceedings on the new trial to be in accordance with what is said herein, and the appeal from the order refusing to vacate the judgment be dismissed.

Ordered accordingly.

MORRISON, C. J., SHARPSTEIN, J., McKEE, J., and McKINSTRY, J., concurred.

Rehearing denied.