On the 19th day of June following, the seller tendered title.

His signature to the title was not equivalent to a written authorization.

A written authorization should have been given before the sale as provided in the article. There is not a scratch of a pen to show such authorization before the sale. The tender was made some six months after the adjudication.

Application for rehearings refused.

======

(48 South. 126.)

No. 17,071.

STATE ex rel. BOARD OF COM'RS OF SALINE LEVEE & DRAINAGE DIST. v. CAPDEVIELLE, Auditor, et al. (BOARD OF COM'RS OF RED RIVER, A. & B. B. LEVEE DIST., Interveners).

(Dec. 14, 1908. Rehearing Denied Jan. 18, 1909.)

1. MANDAMUS (§ 22*)—PERSONS ENTITLED TO RELIEF—PUBLIC OFFICERS.

The State Auditor, the Register of the State Land Office, and the Board of Commissioners of the Red River, Atchafalaya & Bayou Bœuf Levee District, all state officials and members of the executive department, with certain powers vested in and imposed on them by Acts No. 79, p. 63, of 1890, and No. 46, p. 50, of 1892, having so interpreted the mandate contained in those statutes as that the lands therein referred to have been conveyed by said Auditor and Register to said board, and by the latter sold to innocent third persons buying upon the faith of public statutes and public records, and who thereby acquired title emanating from the state and valid upon its face, and the state having apparently acquiesced in the action so taken, the Board of Commissioners of the Saline Levee & Drainage District, also a state agency, thereafter created, and exhibiting no special authority in the premises, has no standing to discredit such title, and hence has no standing in applying for a writ of mandamus to compel said Auditor and Register to execute a deed of conveyance of the land in question to it.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 54; Dec. Dig. § 22.*]

2. MANDAMUS (§ 153*)—PARTIES — INTERVENTION.

An intervention may be allowed in a mandamus proceeding.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 294; Dec. Dig. § 153.*]

3. PARTIES (§ 40*) — INTERVENTION — WHO MAY INTERVENE—VENDOR.

A vendor of land has sufficient interest to give him a standing, as an intervener, in a proceeding the purpose of which is to discredit or nullify the title conveyed by him.

[Ed. Note.—For other cases, see Parties, Cent. Dig. § 62; Dec. Dig. § 40.*]

4. PARTIES (§ 42*)—INTERVENTION—TIME FOR.

An intervener is not entitled to delay the case, but he may come in at any time.

[Ed. Note.—For other cases, see Parties, Cent. Dig. § 69; Dec. Dig. § 42.*]

(Syllabus by the Court.)

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; Harney Felix Brunot, Judge.

Mandamus by the State, on relation of the Board of Commissioners of the Saline Levee & Drainage District, against Paul Capdevielle, State Auditor, and A. W. Crandell, Register of the State Land Office, in which action the Board of Commissioners of the Red River, Atchafalaya and Bayou Bœuf Levee District intervened. Judgment for defendants and intervener, and relator appeals. Affirmed.

Foster, Milling & Godchaux, Alexis Brian,.

and Joseph Clifton Cappel, for appellant. Walter Guion, Atty. Gen. (Ruffin Golsan Pleasant and Adolph Valery Coco, of counsel), for appellees Capdevielle and another. White & Thornton & Holloman, for appellee Board of Com'rs of Red River, A. & B. B. Levee Dist.

### Statement of the Case.

MONROE, J. Relator prays for a writ of mandamus directing the defendants to execute a deed to certain lands which it alleges were conveyed to it by the state by Act No. 80, p. 125, of 1906. Defendants answer that the lands in question did not belong to the state at the date of the passage of Act No. 80 of 1906, having been previously conveyed by the state to the Red River, Atchafalaya and Bayou Bœuf Levee District, and by the Board of Commissioners of that district sold to John V. Moffet and Allen R. Dillon by acts of sale, duly recorded, and that they have no duty to perform in regard to them. The Board of Commissioners of the Red River, Atchafalaya and Bayou Bœuf Levee District intervene, and allege that the lands claimed were conveyed to it on January 27, 1900, under the authority of Acts No. 79. p. 63, of 1890. and No. 46, p. 50, of 1892, and were sold by it before the creation of the relator board, and that the act of 1906, upon which relator relies, purports to convey to it only the lands within the limits of the district, "now belonging, or that may hereafter belong, to the state of Louisiana," which grant does not include the lands in question, the state's, and intervener's, title to which had previously been devested. A motion was filed to strike out this intervention, on the grounds that intervener is without interest, that the intervention came too late, and that an intervention is not permissible in a proceeding of this character.

The case, then, proceeded to trial, and the following facts were admitted or proved, to wit:

Admitted that the lands claimed were acquired by the state from the United States, under the swamp land acts, that they are located within the limits of the Saline Levee and Drainage District, as created by Act No. 80, p. 125, of 1906, and, also within the limits of the Red River, Atchafalaya and Bayou Bœuf Levee District, as fixed and described in section 1 of Act No. 79, p. 63, of 1890, and section 1 of Act No. 46, p. 50, of 1892; and that relator has made a legal demand on the Auditor and Register for a deed to said land, as required by Act No. 80 of 1906.

Act No. 79, p. 63, of 1890, establishes and defines the limits of the Red River Atchafalaya, and Bayou Bœuf Levee District (hereinafter called the "Red River District"), in the parishes of St. Landry, Rapides, and Avoyelles, creates a board of commissioners for the administration of its affairs, and vests the board so created with certain powers and imposes on it certain obligations. Section 6 of the act authorizes the board to levy such taxes on all property subject to taxation for levee and drainage purposes as may be authorized by article 214 of the Constitution (of 1879). Section 10 provides that, for the purpose of raising additional funds for the district, the board—

"shall have power to levy an annual * * * assessment, upon all lands in said district, subject to taxation for levee and drainage purposes, not to exceed 5 cents per acre * * *. That, in order to provide additional means * * *, all lands, now belonging, or that may hereafter belong to the state of Louisiana, and embraced within the limits of the * * * district, as herein constituted, shall be, and the same are, hereby, given, granted, bargained, donated, conveyed and delivered to said board * * *, whether said lands are parts of the lands originally granted by Congress * * *, or whether said lands have been, or may hereafter be, forfeited to, or bought in by, or for, or sold to, the state, at tax sale, for nonpayment of taxes. Where the state has, or may hereafter, become the owner of lands, by, or through, tax sales, conveyance thereof shall only be made to said board * * * after the period of redemption shall have expired, provided, however, that any and all former owners of lands which have been forfeited to purchasers, by, or sold to, the state, for nonpayment of taxes, may, at any

time within six months ensuing after date of the passage of this act, redeem said lands or any part of them upon paying all taxes * * * due thereon down to the date of such redemption, but such redemptions shall be deemed and taken to be sales of land by the state, and all and every sum or sums of money so received shall be place to the credit of the Red River * * * District. After the expiration of said six months, it shall be the duty of the Auditor and the Register * * *, on behalf of, and in the name of, the state, to convey to the said board * * *, by proper instruments of conveyance, the land hereby granted, or intended to be granted and conveyed, to said board, whenever, from time to time, said Auditor and Register * * *, or either of them, shall be required to do so by the said board * * *, or by the president thereof, and, thereafter, said president and board shall cause said conveyance to be properly recorded in the recorder's office * * *, and, when said conveyances are so recorded, the title to said lands, with the possession thereof, shall, from thenceforth, rest, absolutely, in the said board * * * its successors or grantees; said lands shall be exempted from taxation, after being conveyed to, and while they remain in possession of, or under the control of, said board. Said board shall have the power * * * to sell * * *, or otherwise dispose of, said lands, in such manner, and at such time and for such prices, as said board shall deem proper, but all proceeds derived therefrom shall be deposited in the state treasury, to the credit of the Red River * * * District, and shall be drawn out only upon the warrant of the president of said board. * * *

"Sec. 11. * * * That all money arising from, or that shall accrue from, said district, by taxation or otherwise, shall be placed to the credit of the Red River * * * District, and shall be held and used, exclusively, for the necessary drainage, construction, repair and maintenance of any and all public levees in said district, which, in the opinion of the Board of State Engineers, will protect said levee district from overflow and for the payment of the members of said board and their secretary and the actual and necessary cost of organizing said board and putting this act into effect."

Section 13 provides that all moneys in the state treasury to the credit of the several parishes in which the Red River District is established shall be transferred to the district.

Section 15 reads:

"That, upon the application of the president of the police jury of any parish situated within this levee district, it shall be the duty of the levee board to have the Board of State Engineers examine any section of any parish, designated, to ascertain whether, on account of natural difficulties, it would be impolitic to attempt to protect the portion of said parish so examined, and, in case the report of said engineers should be adverse to the building of levees, then, such lands, unprotected by levees, shall be exempted from the provisions of this act."

The Board of Commissioners having been organized under the statute thus referred to, there was presented to it, on November 18, 1890, a petition signed by the president of the police jury of the parish of Avoyelles requesting it to have certain lands in the district, and in that parish, examined "with a view of having it pronounced impolitic to protect them by levees."

The board, accordingly, requested the engineers to make the desired examination, and, the engineers having reported "that it is impolitic, at this time, to attempt to protect" the lands in question, the board adopted a resolution (January 28, 1891) to the effect that said lands "be exempted from the operation of Act No. 79, p. 63, of 1890."

On September 14, 1891, a petition was presented, numerously signed by property holders (owning lands, also, lying in the parish of Avoyelles and within said district), and indorsed by the president of the police jury, alleging and praying that certain (other) lands—

"are unprotected by levees and are subject to overflow * * *, no likelihood of being protected, for some years, for which reason your petitioners respectfully ask that the lands comprised within the specified limits be exempted from the levee tax as fixed by the act creating your board."

This petition was also referred to the engineers, who reported, as before, that:

"On account of natural difficulties, it would be impolitic, at this time, for your board to attempt the building of levees in the said section of the parish of Avoyelles"

—to which they added:

"The Board of State Engineers would, furthermore, at this time, take occasion to express the opinion that the full intent of this exemption, when made, coupled with those already passed upon, is to relieve from the operation of Act No. 79, p. 63, of 1890, as far as the levying of taxes for levy purposes is concerned, all that part of the parish of Avoyelles, subject to overflow, north of Red river, and all that part, south

of the same, bounded by Bayou des Glaizes, the Atchafalaya and Red rivers, and the public road running from David's Ferry, on Red river, to the Bayou des Glaizes, by way of Marksville, Mansura, and the long bridge at Bout du Bayou."

In 1892, the General Assembly passed the Act No. 46 of that year, entitled "An act to amend and re-enact Act No. 79, of 1890, creating the Red River, Atchafalaya and Bayou Bœuf Levee District," sections 1 and 10 of which (without going further) are identical with the sections bearing those numbers in the act of 1890. In other words, the delimitation of the district and the grant to it of all the state land therein contained, or thereafter to be acquired, are reiterated totidem verbis. No further action bearing upon the questions here at issue appears to have been taken until January 27, 1900, when, upon the application of the Board of Commissioners of the Red River District, the Auditor and Register, acting, as the deed recites, under the authority of Acts No. 79, p. 63, of 1890, and No. 46, p. 50, of 1892, executed a formal instrument, conveying to the board all the state lands, described in the instrument, situated in the parish of Avoyelles and embraced within the limits of that district, the lands described including those which had been the subject of the petitions and action in 1890 and 1891, heretofore referred to, and the instrument so executed being duly recorded, in the parish of Avoyelles, on January 30th following. The lands so conveyed were then sold by the board to John V. Moffet and Allen R. Dillon by act recorded March 17, 1900. Moffet and Dillon sold them to James B. Staley by act recorded June 17, 1901. And thereafter, by acts duly recorded, down to March 12, 1904, they were sold by Staley to McCormick, by McCormick to the Avoyelles Company, and by the Avoyelles Company to the Louisiana Construction Company, which last-mentioned company appears to be the present holder of the title. In 1906 the General Assembly passed Act No. 80 of that year, converting into the Saline Levee and Drainage District that portion of the Red River District in which the lands heretofore referred to are situated, and granting to the new district "all lands, now belonging, or that may hereafter belong, to the state * * * and embraced within the limits of said district," whether said lands have been or hereafter be forfeited or bought in, etc. (the language of the grant being the same as in Acts No. 79, p. 63, of 1890, and No. 46, p. 50, of 1892).

### Opinion.

The motion to strike out the intervention does not appear to have been finally acted on by the judge a quo, and is rather insisted on in this court. But, as the intervener asked for no delay, the intervention was not too late; as the title which emanated from the intervener is indirectly the object of attack, we think it has sufficient interest to authorize it to appear; and, as we have heretofore held that "the form of action cannot control the right to intervene" (State ex rel. Southern Bank v. Pillsbury, Mayor, 31 La. Ann. 1), we conclude that the grounds of the motion are not well taken.

On the merits of the case, or, rather, upon the question of relator's right to proceed by mandamus, it is evident, from the language of the second of the two petitions addressed to the Board of Commissioners of the Red River District, from the report of the Board of Engineers in response thereto, from the action of the commissioners in applying for the conveyance of the land here in question, of the Auditor and Register in making such conveyance, and of the commissioners in selling the land, six years before the Saline district was created, that, among the officials and others who were interested in the matter, and who have been called on to construe the provisions of Acts No. 79, p. 63, of 1890, and No. 46, p. 50, of 1892, the opinion has

prevailed that the exemption provided for in section 15 of the act of 1890 related only to lands, owned by individuals, which might be subjected to taxation for levee purposes, but to which, by reason of natural difficulties, it might be found impolitic, for the time, to afford corresponding protection. In addition to that, we have the action of the lawmakers themselves, not alone in re-enacting, in 1892, in the same words, the grant contained in the act of 1890, but in referring, in the act of 1892, to section 15 of the act of 1890 as providing for an exemption of lands from taxation for levee purposes, and not as providing for their exclusion from the levee district. Thus, section 7 of the act of 1892 makes provision for cases in which the owners and the assessors disagree as to whether particular lands are subject to taxation under the act. Two neighbors are to be called in, and, if they fail to agree, the assessor is to report the fact to the president of the Board of Commissioners, who is authorized to call on the Board of Engineers to make surveys and take levels in order to determine whether the lands would be subject to overflow if there were no levees. If the Board of Engineers reports that the lands would not be subject to overflow, or, if the president of the Board of Commissioners fails to refer the matter to the engineers, the lands are to be exempted from taxation for the year. On the other hand, if the engineers report that the lands would be subject to overflow if there were no levees, or if the levees should break, then the lands are to be taxed for levee purposes under the act, "provided, that said lands have not already been exempted from taxation, under section 15 of Act No. 79, p. 69, of 1890." If, however, section 15, of the act of 1890, were intended to apply to lands conveyed by the state to the drainage district, it is clear that no question of exemption from taxation could arise since such lands are not subject to taxation. And, upon the other hand if the section refers to exemption from taxation, it is equally clear that it could have been intended to apply only to lands that were subject to taxation, i. e., lands belonging to individuals and not to the state or the levee board. Without pursuing this particular branch of the inquiry any further, and without entering upon the consideration of the question of the purpose, if such purpose existed, in withdrawing from the levee board, by section 15, of the act of 1890, lands which had been granted to it by section 10, enough has been said to show that the action of the Commissioners of the Red River District, in applying to the Auditor and Register for a deed to the lands in question and in subsequently selling the lands, and the action of the Auditor and Register in executing the deed as requested, presents a case, not of plain disregard of law and authority, but, of public officers discharging the duties imposed upon them in accordance with their reading of the mandate under which they hold their positions and are compelled to act. The commissioners were bound to interpret the law in order to know what assets they could rely on for the prosecution of the work they were expected to do, and, reaching the conclusion that the lands in question had been conveyed to them for that purpose, and had not been withdrawn, did no more than their duty in requesting the Auditor and Register to make them a merchantable title thereto. And the Auditor and Register were similarly situated; that is to say, as the law imposed on them the duty of executing a formal instrument, vesting in the Board of Commissioners title to the lands intended to be conveyed, they were bound to interpret the law in order to find out what lands they were to include in such instrument.

The record does not show that such was the case, but it may be that these several agents were advised by the law officers of the state. At all events, there is not the faintest suggestion that they did not, in

good faith, exercise their best judgment in the matter, and there can be no doubt that they were acting within the scope of the general authority conferred on them by the state; the result being that there was placed on record, in the parish of Avoyelles, a title from the state to the board to certain lands which, by the terms of the law, had apparently been conveyed to the board by the state itself; that the board sold the lands, under authority equally patent upon the face of the law, to innocent third persons purchasing upon the faith of the record and of the law authorizing it; and that the board, having received the price, has devoted it to the purposes to which the law dedicated the lands, while the lands have, in the meanwhile, been sold and resold, and, perhaps, divided and improved, according to the views of those who, with such good reason, believed themselves to be the owners.

Matters having reached the condition thus stated, relator appears and shows that, nearly six years after the Auditor and Register had executed the instrument conveying the lands to the Red River Commissioners, and after the lands had been sold by the latter and resold by its vendees, it (the Board of Commissioners of the Saline Levee and Drainage District) had also been created an agent of the state, and that, in creating it, the state had granted to it, not the lands in question, but (speaking as of date July 5, 1906) "all lands, now belonging, or that may hereafter belong, to the state * * * and embraced within the limits of the Saline Levee and Drainage District"; and, upon the basis of the grant so worded, relator asks that the Auditor and Register be ordered, by mandamus, to execute deeds conveying to it the same lands that these officers, some seven years ago, conveyed to the Board of Commissioners of the Red River District. We can hardly assume, however, that, in creating the Saline Levee and Drainage District, the General Assembly acted in ignor-

ance of the fact that the Auditor and Register, interpreting the grant contained in the acts of 1890, and 1892, had conveyed the lands to the Red River District, and we do not find that the act of 1906, or any other legislation enacted since the year 1900, repudiates or questions that conveyance. We can therefore discover no basis upon which to predicate the order prayed for. Relator's idea of what the Auditor and Register and the Commissioners of the Red River District should have done in the matter is, to say the least, no more authoritative than are the ideas upon which those other representatives of the executive department have acted, and the state itself, through the lawmaking power, appears to have acquiesced in the view adopted by the latter.

In view of the situation as thus presented, and of the fact that title to the lands here claimed, made by the respondents, acting as state agents, within the limits of their apparent power, and valid upon its face, is outstanding in third persons, we are of opinion that relator, exhibiting no special authority in the premises, has no standing to discredit such title, and hence has no standing to prosecute this suit.

The judgment appealed from is, therefore, affirmed.

BREAUX, C. J., takes no part.