LOUIS BARTLETT, APPELLANT, *v.* THE BISHOP OF NEVADA, A CORPORATION SOLE, RESPONDENT.

No. 3257

June 23, 1939.                                        91 P.(2d) 828.

*Louis Bartlett,* Appellant, in Propria Persona:

*Wayne T. Wilson* and *Emerson J. Wilson,* for Respond-ent:

**OPINION**

By the Court, TABER, C. J.:

In April 1937, in the First judicial district court, Douglas County, respondent, as plaintiff, commenced civil action No. 595 against George Miracle. In substance, the complaint in that action alleges:

That on May 21, 1920, and continuously for a long time prior thereto, Katherine Smith Hill, predecessor in interest of plaintiff and of defendant Miracle, was the owner of the NW¼ of the SE¼ of section 27, township 13 N., range 18 E., Mount Diablo base and meridian, said property being adjacent to the townsite of Lakeside, California, on the shore of Lake Tahoe.

That on said 21st day of May 1920 said Katherine Smith Hill deeded to plaintiff a part of said subdivision, with easements and appurtenances particularly

described as follows, to wit: "That certain tract, piece or parcel of land situate, lying and being in the County of Douglas, State of Nevada, particularly described as follows: Commencing at a point at right angles and fifty feet distant from the boundary line between the states of Nevada and California and at the northwesterly side of the State Highway extending along the east side of Lake Tahoe, between Glenbrook and Stateline, said point being about 2,300 feet northeasterly from the forks of said State Highway and the road leading to Tallac, and about 1,890 feet northeasterly from the Stateline Post Office, and running thence 1st course, N. 48° 15′ W., (parallel to and fifty feet distant from the said boundary line between Nevada and California, the said fifty feet (50′) being dedicated as a roadway or street) 1,107 feet, more or less, to the intersection of this parallel line and the north side of the south half of Section 27, Township 13 North, Range 18 East, Mount Diablo Base and Meridian. Thence 2nd course, East, (along the north side of said South half of Section 27), 268 feet, more or less to a point at right angle and 250 feet distant from said State boundary line, thence 3rd course, S. 48° 15′ E., 840 feet more or less, to the northwest side of said State Highway. Thence 4th course, about S. 30° W., (along the northwest side of said State Highway), 204.5 feet, more or less, to the place of beginning."

That plaintiff ever since the 21st day of May 1920 has been the owner in fee simple and in the actual peaceable possession of said real property, together with the improvements thereon and the appurtenances thereunto belonging.

That lying along the state line, between the States of California and Nevada, and for a distance of fifty feet on each side of said state line, commencing at the state highway on the south and running northwesterly along said state line and along the westerly line of the above-described premises, to the shore of Lake Tahoe, is a roadway or street known and designated as Stateline

avenue; that ever since a time more than twenty years prior to said 21st day of May 1920 said Stateline avenue has been dedicated to the general public, and was until May 1936 openly and notoriously used, without let or hindrance from any person, as a foot way, and for wagons, and coaches, and vehicles of every nature and description, by the adjoining property owners and the general public as a thoroughfare to be used by the adjoining property owners and the general public in accordance with their convenience and desires; that said street or roadway was known to the general public and to the adjoining property owners for many years prior to the said 21st day of May 1920 as Stateline avenue, and was so delineated and designated on a town-site plat filed of record with the county recorder of Eldorado County, California, by said Katherine Smith Hill, and her husband, Arthur N. Hill, on or about the 5th day of October 1909; that by filing said plat the said Hills evidenced their intention to dedicate, and did at said time dedicate, said Stateline avenue to the use of the general public as a right of way or thoroughfare, without interference or molestation by or from any person whomsoever, and that by and on account of such designation and such setting apart of said street by said owners and by long continued use, plaintiff and other adjoining property owners and the general public have acquired an easement and right to the use of said roadway or street; that plaintiff and other adjacent property owners and the general public accepted said dedication of said Stateline avenue, and it has been used as a street, road or highway by the plaintiff and other adjacent property owners and the general public continuously for a period of twenty-seven years or more without let or hindrance from any person, and as a matter of right.

That about May 1936 said defendant, George Miracle, forcibly, and against the protest of plaintiff, erected a fence across and in that portion of said Stateline avenue located in the county of Douglas, State of Nevada, and

enclosed that portion of said Stateline avenue adjacent to the property of plaintiff, described as follows: "Commencing at a point on the north side of the south half of Section 27, Township 13 N., R. 18 E., said point being at right angle to and 50 feet distant from the boundary line between the states of California and Nevada; thence 50 feet southwesterly to the boundary line between the states of Nevada and California; thence northwesterly along said boundary line between the states of California and Nevada to the point of intersection between said boundary line between the states of Nevada and California and the north side of the south half of section 27, Township 13 N., Range 18 E., Mount Diablo Base and Meridian; thence along the north side of the south half of said section 27, Township 13 N., Range 18 E., Mount Diablo Base and Meridian, to the place of beginning."

That thereafter said defendant constructed upon said enclosed portion of said Stateline avenue three small buildings, and by said fence and buildings obstructed said Stateline avenue and excluded and still does exclude plaintiff and the adjoining property owners and the general public from the use and enjoyment of said described portion of Stateline avenue, to the great inconvenience, detriment and irreparable injury of said plaintiff, and that said defendant ever since has and still does continue to maintain said obstructions, thereby preventing the plaintiff from enjoying his easement in said Stateline avenue.

The relief prayed by plaintiff is (1) that defendant be required to remove said obstructions; (2) that defendant be forever restrained from interfering with said Stateline avenue, and with plaintiff's free and unobstructed use of the same; (3) such other and further relief as to the court may seem meet and just.

On June 30, 1937, an answer to said complaint was filed by said George Miracle and Margaret A. Dixon, also known as Mrs. George Miracle, as defendants in said action. In this answer defendants deny that the

strip of land running along the state boundary line on the Nevada side, alleged by plaintiff to be a part of Stateline avenue, or any part of said strip of land on the Nevada side, was ever dedicated at all. They admit that the strip on the California side of said boundary line was dedicated as Stateline avenue.

They admit that about May 1936 defendant George Miracle erected a fence on the southwesterly side on the the following described property, situate in the NW¼ of the SE¼ of section 27, township 13 N., range 18 E., M. D. B. & M., in the county of Douglas, State of Nevada: "Commencing at a point on California-Nevada state line distant thereon 989.80 feet N. 48° 42′ W. from its intersection with the westerly line of the Lincoln Highway, running thence S. 48° 42′ E. along said California-Nevada state line 292.33 feet; thence at a right angle NEly 50 feet; thence at a right angle N. 48° 42′ W. a distance of 200 feet; thence N. 80° 12′ W. to point of commencement." They deny that said fence was erected across or that it enclosed any portion of Stateline avenue, and they further deny that Stateline avenue is in any part located in the county of Douglas, State of Nevada. They admit that defendant George Miracle constructed three small buildings on the property last above described, and that he excluded and does still exclude plaintiff and adjoining property owners and the general public from the use and enjoyment of said property; but they deny that defendants or either of them did or do obstruct in anywise Stateline avenue, or any part thereof; and they deny that plaintiff has any easement in or to said property on the Nevada side of said state boundary line. They allege that the strip of land on the Nevada side of said state boundary line, and claimed by plaintiff to be a part of Stateline avenue as aforesaid, is, and for many years has been, privately owned; and that the said parcel of land, upon which said three buildings and said fence were constructed, is included in said strip of

land on the Nevada side, claimed by plaintiff to be a part of Stateline avenue. They allege that on May 11, 1936, the owners of said strip of land in Nevada entered into an agreement with defendant Margaret A. Dixon, also known as Mrs. George Miracle, by the terms of which she agreed to purchase from said owners, and they agreed to sell unto her, the property last above particularly described herein, and that since the execution of said agreement, defendants have been in possession of said property and have constructed thereon certain frame dwellings, by virtue of the terms of said agreement.

The relief prayed by defendants in their said answer is that plaintiff take nothing by its complaint; that the action be dismissed; and that defendants have their costs.

On July 8, 1937, plaintiff filed its reply to said answer the allegations and denials of which need not here be stated.

On July 15, 1937, appellant Louis Bartlett, as intervener in said district court action No. 595, filed therein his amended complaint in intervention, alleging that he and his predecessors in interest are and since October 5, 1909, have been continuously the owners of a half interest in and in actual possession of and entitled to the possession of the following described property in Douglas County, Nevada, and in the NW¼ of the SE¼ of section 27, township 13 N., range 18 E., M. D. B. & M.: "A strip of land fifty feet in width at right angles and northeasterly from the California-Nevada State line, commencing at a point thereon 100 feet northwesterly from its intersection with the Lincoln Highway, and extending northwesterly along said State line 880.80 feet, and 797.47 feet on the parallel line northeasterly therefrom; and including the triangle formed by a line joining the northwesterly ends of the parallel lines described, with a line at a right angle to said State line, passing through the northwesterly point

of said parallel line." He alleges that "on May 11, 1936 John H. Kimball, as trustee for himself and Louis Bartlett, plaintiff in intervention, entered into an agreement with Margaret A. Dixon, also known as Mrs. George Miracle, by the terms of which said Margaret A. Dixon agreed to purchase and said John H. Kimball, as trustee for himself and plaintiff in intervention, agreed to sell to said Margaret A. Dixon that certain lot or parcel of land in Douglas County, Nevada, and in Section 27, Township 13 N. Range 18 E., M. D. B. & M., described as follows: Commencing at a point on the California-Nevada State Line distant thereon 989.80 feet north 48° 42′ west from its intersection with the westerly line of the Lincoln Highway, running thence south 48° 42′ east along said California-Nevada State line 292.33 feet; thence at a right angle northeasterly 50 feet; thence north 48° 42′ west a distance of 200 feet; thence north 80° 12′ west to the point of commencement (subject to correction of survey.)" He further alleges that in the months of June and July 1936 plaintiff corporation sole, defendant in intervention, and one Thomas Jenkins trespassed upon the property last above particularly described, and attempted to open up a road thereon from its easterly boundary on the Lincoln highway to and including the property occupied by the defendants, caused a line of fence posts upon the boundary of said property along the California-Nevada state line to be pulled up, and cut down two large fir trees and a number of smaller trees on said property.

The relief prayed by plaintiff in intervention is: "I. That said defendant be required to restore said line of fence posts removed by it as hereinabove set forth. II. That said defendant be restrained forever from interfering with the property described in this amended complaint in intervention and a decree of this court for such other and further relief as to this court may seem meet and just in the premises, and for general relief, and for costs of the plaintiff in intervention in this action."

To said amended complaint in intervention plaintiff, Bishop of Nevada, filed a general demurrer. Plaintiff also moved to strike from the amended complaint in intervention certain portions thereof, and further moved to strike the whole amended complaint in intervention from the files. The trial court took no action on said demurrer, nor on the motion to strike portions of the amended complaint in intervention, but granted the motion to strike said amended complaint from the files and entered judgment dismissing the intervention. Said Louis Bartlett, plaintiff in intervention, has appealed to this court from said order striking from the files his amended complaint in intervention and from the judgment dismissing said intervention.

Section 8563 N. C. L. 1929 reads: "Any person may, before the trial, intervene in an action or proceeding, who has an interest in the matter in litigation, in the success of either of the parties, or an interest against both. An intervention takes place when a third person is permitted to become a party to an action or proceeding between other persons, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendant in resisting the claims of the plaintiff, or by demanding anything adversely to both the plaintiff and the defendant; and is made by complaint, setting forth the grounds upon which the intervention rests, filed by leave of the court and served upon the parties of the action or proceeding who have not appeared, and upon the attorneys of the parties who have appeared, who may answer or demur to it as if it were an original complaint. The court shall determine upon the intervention at the same time that the action is decided; if the claim of the party intervening is not sustained he shall pay all costs incurred by the intervention."

The position taken by appellant is that his amended complaint in intervention sufficiently shows that he is interested in the matter in litigation, and that he is interested in the success of the defendants. Respondent

contends that said amended complaint in intervention is defective in five particulars: "(1) It does not set forth sufficient facts to constitute a right to intervene. (2) The intervener has no apparent interest in the matter in litigation. (3) Intervener is neither joining the plaintiff in claiming what is sought by the complaint, nor uniting with the defendant in resisting the claims of the plaintiff, nor demanding anything adversely to both the plaintiff and defendants. (4) The petition in intervention injects new issues in the case. (5) It does not show where intervener would gain or lose by judgment rendered the plaintiff or the defendant."

According to respondent, intervener does not show an interest of such a direct and immediate character that he will either gain or lose by the direct legal operation of any judgment which might be rendered in the action. Respondent claims that intervener does not allege any interest in the obstructions which were erected by defendants, and further that by reason of the contract of sale and purchase entered into with defendant Dixon, appellant deprived himself of whatever interest he might have had in the controversy between plaintiff and defendants. It is also argued by respondent that intervener alleges new matter which had not been placed in issue by the other parties, and that he seeks an entirely different type of relief from that which is sought by the defendants. Respondent points out that intervener's allegations are not confined to the property described in plaintiff's complaint, and alleged to have been obstructed, but includes property which defendants did not obstruct and in which they have no interest. Intervener, says the respondent, comes in and sets up his title to the property and his right of possession, and then injects the issue of a trespass by plaintiff on certain property, thus making his amended complaint in intervention one in the nature of a cross-complaint.

The ultimate issue between plaintiff and defendants, as stated by respondent, is whether or not that portion of the fifty-foot strip described in the complaint and

obstructed by the defendants was or was not dedicated and accepted as a roadway. Appellant agrees to this statement and proceeds to point out that he, as plaintiff in intervention, claims ownership in fee of a one-half interest in said particular piece of land, while plaintiff (defendant in intervention) claims a right to use said property as a dedicated roadway.

We have carefully considered the briefs of appellant and respondent, as well as many authorities not cited in any of them, and our conclusion is that appellant is entitled to intervene in this action because his amended complaint in intervention shows that he has an interest in the matter in litigation, and that he is interested in the success of the defendants.

We do not decide whether the amended complaint in intervention is faulty or defective in some particulars. Our decision goes only to the extent that intervener's complaint should not have been stricken in its entirety, nor his intervention dismissed.

As might be expected, no case has been found which is similar in all respects to the case at bar. Following are some of the authorities which have proved helpful: Rutherford v. Union Land & Cattle Company, 47 Nev. 21, 213 P. 1045; Crumley v. Fabbi, 47 Nev. 14, 213 P. 1048; Elms v. Elms, 4 Cal. (2d) 681, 52 P. (2d) 223, 102 A. L. R. 811; Robinson v. Crescent City Mill & Transp. Co., 93 Cal. 316, 28 P. 950; Coffey et al. v. Greenfield, 55 Cal. 382; Orcutt v. Woodard, 136 Iowa, 412, 113 N. W. 848; Northern Gravel Co. v. Muscatine North & S. Ry. Co., 185 Iowa, 1259, 171 N. W. 787; McConniff v. Van Dusen, 57 Neb. 49, 77 N. W. 348; Jones v. Security State Bank, 120 Okl. 231, 251 P. 65; Clements v. Holmes, Tenn. App., 120 S. W. (2d) 988; State v. Capdevielle, 122 La. 615, 48 So. 126; Pomeroy's Code Remedies, Fifth Edition, secs. 308, 310, 313, 323, 324, 325; Clark on Code Pleading, sec. 65; Bancroft's Code Practice and Remedies, vol. 2, secs. 772, 774, 775; Bancroft's Code Pleading, Practice and Remedies, Ten Year Supplement, vol. 1, secs. 590, 591, 593; 20 Cal. Jur. 520, 521, sec. 25;

20 R. C. L. 685, 686, sec. 23, 687, 688, sec. 26; Annotation, 123 Am. St. Rep. 280, at pages 298, 299, 300, 301; 47 C. J. 101, 102.

■ There are two types or classes of code provisions relating to intervention. Nevada is one of the states which have adopted the broader and more liberal type of statute. Clark on Code Pleading, sec. 65; Pomeroy's Code Remedies, Fifth Edition, secs. 308, 310; Bancroft's Code Practice and Remedies, vol. 2, sec. 772; Rutherford v. Union Land & Cattle Company, supra. Referring to the type of intervention statutes obtaining in California, Nevada and many other states, Professor Pomeroy says: "This is certainly a great innovation upon the procedure which has hitherto prevailed in courts of law and of equity. It is, however, a method based upon the very principles which lie at the foundation of the entire reformed American system. The only possible objection is the multiplication of issues to be decided in the one cause, and the confusion alleged to result therefrom. This objection is not real: it is the stock argument which was constantly urged in favor of retaining the common-law system of special pleading, and was repudiated when the codes were adopted by the American States, and has been at last utterly repudiated in England. Complicated issues of fact are daily tried by juries, and complicated equities are easily adjusted by courts." Code Remedies, Fifth Edition, sec. 325.

■■ It is quite uniformly held, under intervention statutes of the Nevada type, that a claim to the property which is the subject of litigation, or to some part of such property, constitutes a sufficient interest to entitle intervention on the part of the claimant. In 20 R. C. L., at page 685, it is said: "Under most, if not all, the statutes, a person who is entitled to the subject matter of the action or some substantial interest therein may intervene in an action involving its title or the right to its possession." Similarly, in 20 Cal. Jur., at page 521: "The fact that the intervener may or may not protect his interest in some other way is immaterial

provided there exists the statutory 'interest in the matter in litigation or in the success of either of the parties.' The code does not attempt to specify what or how great this necessary interest shall be; indeed any interest is sufficient. Thus an interest suffices if created by a claim to the demand or some part thereof in suit, or a claim to or lien upon the property or some part thereof which is the subject of the litigation."

■ Respondent points out that intervener does not allege any interest in the obstructions erected by defendants, nor does he allege that the line of fence posts removed by plaintiff was on the property occupied by defendants. The fact remains, however, that the premises occupied by defendants are wholly included in those of which intervener claims to be half owner, and this latter property, in turn, is wholly included in the fifty-foot strip on the Nevada side alleged by plaintiff to have been dedicated as a part of Stateline avenue. The land occupied by defendants is under contract of sale to them from intervener and his co-owner. If appellant be not permitted to intervene, and judgment should be awarded plaintiff, intervener and his co-owner would be in the position, at least until such judgment could be set aside, of having contracted, as owners, to sell defendants a piece of land in which they had and have no interest. Under these circumstances it seems clear to us that intervener has an interest in the matter in litigation as well as in the success of the defendants.

■ With reference to respondent's contentions that intervener, in alleging trespass by the plaintiff, has introduced new matter, and that he seeks an entirely different type of relief from that sought by the defendants: If that be so, it alone would not justify striking the entire complaint in intervention from the files, and dismissing the intervention. In sec. 775 of Bancroft's Code Practice and Remedies, vol. 2, it is said: "But it is to be borne in mind that it would be practically impossible for one to intervene in an action without presenting a question of fact not involved in the pleadings of the

original parties, and, if this were inhibited, then the code provision on the subject of intervention would be of no avail. The question, therefore, whether or not a new issue of fact is presented by a petition for intervention is not the test to apply in determining whether an issue different from that between the original parties will be made by the intervener; it is sufficient if the ultimate issue to be determined remains the same." As we have seen, respondent says that the ultimate issue made between the plaintiff and defendants is whether or not that portion of the fifty-foot strip described in the complaint and obstructed by the defendants was or was not dedicated and accepted as a roadway. The same rules govern intervener's rights which govern those who originally sue or defend. Pomeroy's Code Remedies, Fifth Edition, sec. 324, p. 485, n. 56. Whether the alleged removal of a line of fence posts by the plaintiff would constitute a trespass on intervener's land depends upon the essential question in this case, namely, whether the fifty-foot strip on the Nevada side of the state line has been dedicated as alleged by plaintiff.

The relief prayed by intervener is not only that plaintiff be required to restore the line of fence posts; he prays for an injunction restraining plaintiff forever from interfering with the property in which he claims a half interest, and further asks such other and further relief as to the court may seem meet·and just in the premises, and for general relief. Intervener's complaint clearly shows that he is interested in the defeat of plaintiff's cause of action as well as in the success of the defendants. It shows that he is resisting the claim that the fifty-foot strip on the Nevada side of the state line has been dedicated as alleged by plaintiff.

■ While a plaintiff frequently, and perhaps usually, has the privilege of selecting the persons to be parties to his case, such privilege is sometimes of less importance than the speedy administration of justice in disposing, in one suit, of the essential question at issue.

Clark on Code Pleading, sec. 65, p. 289; 21 Columbia Law Review, p. 214.

Respondent relies much on the case of Reay v. Butler, 7 P. 669. This case is also reported in 2 Cal. Unrep. 501. A subsequent opinion in bank is reported in 69 Cal. 572, 11 P. 463. The facts in that case are in some respects similar to those in the instant case, but the case is dissimilar to that at bar in a number of important particulars and, in our opinion, the decision is not applicable to the present case.

■ Ejectment is essentially a possessory action. 18 Am. Jur. pp. 7, 8, 21. Ejectment is a legal remedy; the action is one at law, not in equity. 18 Am. Jur. 8, sec. 3. In the opinion in Reay v. Butler, 69 Cal. 572, 11 P. at page 469, the court expressly states that the action in that case was purely one at law. In Rutherford v. Union Land & Cattle Co., supra, where the Nevada intervention statute was under consideration, this court distinguished an earlier Nevada case involving a question of intervention, saying [47 Nev. 21, 213 P. 1048]: "Counsel for respondent contend that the case of Harlan v. Eureka Mining Co., 10 Nev. 92, controls this case, and hence the judgment must be affirmed. The facts of the instant case do not bring it within the rule asserted in the former case. It will be observed that the Harlan Case was an action at law, while the present proceeding is a suit in equity, wherein we are controlled by equitable principles." In the instant case plaintiff has alleged, as a basis for injunctive relief, that defendant Miracle obstructed Stateline avenue with his buildings and fencing, that he still maintains said obstructions "to the great inconvenience, detriment, damage and irreparable injury" of the plaintiff, "thereby preventing the plaintiff from enjoying his easement in said Stateline avenue to the great and irreparable damage of plaintiff." Plaintiff not only prays the court to compel Miracle to remove the alleged obstructions, but asks that he be forever restrained from interfering "with said Stateline Avenue,

highway, or road, as described in Paragraph IV of plaintiff's complaint, and with the plaintiff's free and unobstructed use of the same." In Reay v. Butler, 69 Cal. 572, 11 P. at page 468, the court says: "If the prayer of the complaint gives character to the action, it would seem that the intervenor in this cause was attempting to change an action of ejectment into an action to quiet title." In the case at bar there is not only no attempt to change an action of ejectment into an action to quiet title, but there is no action of ejectment at all. Again, in Reay v. Butler, 69 Cal. 572, 11 P. at page 466, the court says: "It may be conceded that a landlord might have been allowed to intervene and defend an action of ejectment brought against his tenants in their name, in accordance with the law regulating procedure in the courts of this state, at the time Treadwell was allowed to file the intervention in this case. * * * The foregoing intervention by the landlord in this case to defend in the name of his tenants, however, extends only to the defenses which may be made at law. And, for the purposes of this case, it may also be conceded that the landlord might have been permitted to intervene, and set up any equitable defenses which he might have to the action. But if the landlord is allowed to intervene, and set up a defense in equity, it must certainly be a defense of that character." The court analyzes the allegations in intervener's complaint, and after doing so concludes that, while intervener may have attempted to set up an equitable defense, he did not succeed in doing so and the case was therefore held to be purely an action at law in all its aspects. If, as stated by the supreme court of the State of California in Reay v. Butler, supra, 69 Cal. 572, 11 P. at page 466, the landlord might have been permitted to intervene and set up any equitable defenses, we apprehend no reason why such should not be the rule in the instant case where plaintiff corporation sole has itself chosen to allege facts as the basis for equitable relief, and has prayed for such relief.

It is interesting to note that the pleadings in Reay v.

Butler were filed before the adoption of the provision in the California code of civil procedure allowing the landlord to be made a party. This is expressly pointed out by the court in that case (69 Cal. 572, 11 P. at page 464). It may further be observed that in Reay v. Butler the defendants were tenants of the intervener, whereas in the case at bar defendants are contracting purchasers of a part of the land claimed by plaintiff to have been dedicated as a part of Stateline avenue, and by intervener to be a part of the land in which he owns a half interest.

The rule laid down in Reay v. Butler seems to be an exception to the general rule. As is said in 9 Cal. Jur. at p. 1003, "While the statute provides that any person who has or claims an interest in the controversy adverse to the plaintiff, may be made a party defendant, it has been held that this provision does not apply to actions of ejectment." Respondent does not contend that the instant case is an action in ejectment.

We are not to be understood as saying that the Nevada intervention statute applies only to equitable actions, and not to actions at law.

The court being of the opinion that the amended complaint in intervention shows that intervener is interested both in the matter in litigation and in the success of the defendant, the order and judgment appealed from must be, and they are hereby, reversed.

COLEMAN, J., died before this opinion was prepared.

ORR, J., did not participate in the consideration or decision of this case.